Jason Gottlieb (*Admitted pro hac vice*)
Melissa Madrigal (Fl. Bar No. 93241)
Michael Mix (*Admitted pro hac vice*)
Rachel Fleder (*Admitted pro hac vice*)
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022-4784
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

*Counsel for Defendant Phantom
Technologies, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
Case No. 0:24-cv-60459-AHS

DERIC TIKOTSKY,

        Plaintiff,

        v.

PHANTOM TECHNOLOGIES, INC.,

        Defendant.

## DEFENDANT PHANTOM TECHNOLOGIES, INC.'S
## MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE,
## MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AND
## INCORPORATED MEMORANDUM OF LAW

**<u>TABLE OF CONTENTS</u>**

I.      Preliminary Statement .................................................................................................... 1

II.     Statement of Facts ......................................................................................................... 2

    A.   Phantom's Self Custody Wallet Software ................................................................ 2

    B.   Phantom's Terms of Use ......................................................................................... 3

    C.   Plaintiff's Allegations ............................................................................................. 6

III.    Argument ....................................................................................................................... 7

    A.   The Court Should Compel Arbitration Under the Terms of Service ......................... 7

        1.   The Parties Formed an Agreement to Arbitrate .................................................. 8

        2.   A Nexus to Interstate Commerce Exists ............................................................. 8

        3.   The Arbitration Clause Covers Plaintiff's Claims ............................................... 9

        4.   Phantom Has Not Waived its Right to Compel Arbitration .................................. 9

    B.   Alternatively, The Court Should Dismiss for Failure to State a Claim ..................... 9

        1.   Plaintiff's Claims Are Largely Barred by the Terms of Use .............................. 10

        2.   Plaintiff Fails to State a Claim for Negligence (Count I) or Gross
            Negligence (Count II) .................................................................................... 11

            i.     Plaintiff's Negligence and Gross Negligence Claims Are Barred by
               the Economic Loss Rule ....................................................................... 11

            ii.    Plaintiff Fails to Sufficiently Allege Breach of Duty or Causation .......... 12

        3.   Plaintiff Fails to State a Breach of Fiduciary Duty Claim (Count III) ............... 12

        4.   Plaintiff Fails to State a UCL Claim ............................................................... 14

            i.     Plaintiff Cannot Meet the "Fraud" Prong ............................................. 15

            ii.    Plaintiff Cannot Meet the "Unfair" Prong ............................................. 16

        5.   Plaintiff Fails to State a CLRA Claim ............................................................. 18

            i.     Plaintiff's CLRA Claim Fails for the Same Reasons as His UCL
               Fraud Claim ....................................................................................... 18

            ii.    Plaintiff Has Not Sufficiently Alleged a Statutory "Transaction" ............ 18

        6.   Plaintiff Fails to State a Breach of Contract Claim ........................................... 19

IV.     Conclusion .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ...............................17

*Anderson v. Fitness Int'l, LLC*, 4 Cal. App. 5th 867 (2016)........................................................11

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
    158 Cal. App. 4th 226 (2007) .............................................................................................13

*Ashcroft v. Iqbal*, 56 U.S. 662 (2009) ..........................................................................................10

*Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222 (.D. Fla. 2020) ..................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................10

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..........................................8

*Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007) ...................................15, 17

*BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793 (C.D. Cal. 2021) ....................15

*Cel-Tech Communications, Inc., v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ......................................................................................................17

*Costa v. Experian Info. Sols. Inc.*, 2023 WL 5434683 (M.D. Fla. Aug. 8, 2023) .........................9

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375 (2008) ....................................14

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)............................................15

*Diaz v. Intuit, Inc.*, 2018 WL 2215790 (N.D. Cal. May 15, 2018)...............................................11

*Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...............................................19

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) ...................................................20

*Elias v. Hewlett–Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ........................................14

*Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*,
    251 F.3d 1316 (11th Cir. 2001) ..........................................................................................7

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal. App. 4th 1118 (2012) ..........................................................................................10

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817 (2019) ....................................................................19

*Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018) .............................................9

*Houtchens v. Google LLC*, 649 F. Supp. 3d 933 (N.D. Cal. 2023) ...........................................8

*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 9896 (N.D. Cal. 2012) ...............................19

*Jensen v. U-Haul Co. of Cal.*, 226 Cal. Rptr. 3d 797 (Cal. Ct. App. 2017)..................................19

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ......................................................15

*Li v. AT&T Mobility, LLC*, 2022 WL 3575411, at *2 (C.D. Cal. June 17, 2022).........................19

*Lozano v. AT & T Wireless Servs, Inc.*, 504 F.3d 718 (9th Cir. 2007) .........................................16

*McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) .................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)..................................7

*Net2Phone, Inc. v. Superior Ct.*, 109 Cal. App. 4th 583, 589-90 (2003).......................................11

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ..................................................8

*Parrish v. Nat'l Football League Players Ass'n*,
534 F. Supp. 2d 1081 (N.D. Cal. 2007) ...................................................................................14

*Pierce v. Lyman*,
1 *Cal. App.* 4th 1093, 1101 (1991)..........................................................................................13

*R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138 (N.D. Cal. 2014) ................................10

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir.2010) .........................................................14

*Russell v. Maman*, 2019 WL 13039744 (N.D. Cal. June 19, 2019) ...........................................14

*Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022).........................................................11

*Sherman v. Pepperidge Farm, Inc.*,
2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ......................................................................20

*Sperduto v. Time Warner Cable, Inc.*, 2018 WL 6177239
(C.D. Cal. Aug. 13, 2018).......................................................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007) ..................................................10

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
229 F. Supp. 3d 1284 (S.D. Fla. 2017) ....................................................................................7

*Tristan v. Bank of America*, 2023 WL 4417271 (C.D. Cal. Jun. 28, 2023)..................................13

*Turner v. Porsche Cars N. Am., Inc.*, 2024 WL 2107714 (C.D. Cal. Mar. 4, 2024) ...................16

*Watkins v. MGA Ent., Inc*., 550 F. Supp. 3d 815 (N.D. Cal. 2021) .................................15

*Whitesides v. E\*TRADE Sec., LLC*, 2021 WL 930794 (N.D. Cal. Mar. 11, 2021) .....................11

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).......................................15

*Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003)................................................13

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................................14

Cal. Civ. Code § 1559..............................................................................19

Cal. Civ. Code § 1761..............................................................................18

Cal. Civ. Code § 1770..............................................................................18

**Rules**

Federal Rule of Civil Procedure 8 .................................................................10

Federal Rule of Civil Procedure 9 .............................................................14, 15

Federal Rule of Civil Procedure 12 ............................................................1, 7, 9

**Other Authorities**

Riquede81, *Just got hacked 2600 Sols on phantom wallet*, Reddit, r/solana,
    https://www.reddit.com/r/solana/comments/1865xte/just_got_hacked_2600_s
    ols_on_phantom_wallet/ (last visited June 24, 2024)..............................................6

Will Thompson, *Security at Phantom*, Phantom,
    https://phantom.app/learn/blog/security-at-phantom (last visited June 24,
    2024) .........................................................................................3

*I was phished, scammed or hacked, can you help?*, Phantom,
    https://help.phantom.app/hc/en-us/articles/5487893286291-I-was-phished-
    scammed-or-hacked-can-you-help (last visited June 24, 2024) ....................................2

*NFT Phishing scams*, Phantom, https://help.phantom.app/hc/en-
    us/articles/21415696557203-NFT-Phishing-scams (last visited June 24, 2024).......................3

Defendant Phantom Technologies, Inc. ("Phantom"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves to compel arbitration, or, in the alternative, to dismiss Plaintiff Deric Tikotsky's ("Plaintiff") Complaint (ECF No. 1, the "Complaint" or the "Compl.") for failure to state a claim upon which relief can be granted.

## I.   <u>Preliminary Statement</u>

Plaintiff explicitly agreed to arbitrate his claims against Phantom. His Complaint pretends the clear arbitration clause in Phantom's Terms of Service, to which Plaintiff affirmatively agreed, doesn't exist. The Supreme Court has repeatedly instructed that cases like this belong in arbitration.

Phantom is a software developer that created and offers software that allows users to "self-custody" their own cryptocurrency. The defining characteristic of a self-custody wallet is that the user – and only the user – can control their cryptocurrency. Unlike a custodial cryptocurrency wallet offered by some centralized exchanges, Phantom has no custody or control over the user's cryptocurrency. Phantom cannot access, or do anything with, a user's cryptocurrency.

Plaintiff allegedly held 2,293 Solana ("SOL") cryptocurrency tokens in his Phantom wallet. Sometime after clicking on an offer to receive an NFT – an action that the Complaint concedes Phantom explicitly warned him <u>not</u> to do – Plaintiff alleges that his tokens were gone. Plaintiff, frustrated with his own error, has erroneously sued Phantom for his losses.

Plaintiff has no cognizable claim. But, as a threshold issue, if Plaintiff wants to pursue his meritless claims, he must do so in arbitration. When he signed up for a Phantom wallet, Plaintiff affirmatively agreed to be bound by Phantom's Terms of Service. Phantom's Terms of Service unambiguously requires Plaintiff's claims to be arbitrated.

In the alternative, if (for some reason) this Court decides that the case should not be sent to arbitration, the Complaint fails to state a claim upon which relief can be granted. Plaintiff's attempt to blame an innocent actor, Phantom, for some third party's alleged theft of his tokens is implausible, baseless, precluded by the disclaimers and the limitations on liability in Phantom's Terms of Service, and contrary to case law on point. If a thief stole Plaintiff's funds, he has a gripe with the thief, but not with Phantom.

## II.  Statement of Facts

### A.  Phantom's Self Custody Wallet Software

Phantom offers "self-custody" (or "non-custodial") wallet software, downloadable via computer or mobile application, that enables users to control supported cryptocurrency tokens that reside on blockchains on the internet. Compl.¶¶ 31, 33. The primary feature of a self-custody wallet is that only the user, rather than some centralized provider, controls the user's cryptocurrency because only the user has access to the wallet's private keys and the secret recovery phrase.[1] Phantom does not require users to "provide personally identifiable information or [their] personal data such as [their] name, email address, tax ID or phone number." Compl. ¶ 49. Because Phantom provides a self-custody wallet, Phantom cannot access, control, freeze, or take possession of a user's assets. All transactions are "final and irreversible" and Phantom is unable to "reverse or block transactions once they have been confirmed."[2] Phantom's website advises users about

---

[1]   Every cryptocurrency address (a public sequence of letters and numbers that cryptocurrency can be sent to or from) has corresponding private keys enabling the owner to access the cryptocurrency assets. *See* Compl. ¶¶ 13-14.

[2]   *I was phished, scammed or hacked, can you help?*, Phantom, https://help.phantom.app/hc/en-us/articles/5487893286291-I-was-phished-scammed-or-hacked-can-you-help (last visited June 24, 2024) (cited at Compl. ¶ 22 n.4). Articles relied upon in the Complaint are incorporated by reference.

the benefits and risks of using a non-custodial wallet.  *See, e.g.*, Compl. ¶ 33 n.5 (citing Will Thompson, *Security at Phantom*, Phantom, https://phantom.app/learn/blog/security-at-phantom (last visited June 24, 2024) ("But while self-custody gives direct access to the entire decentralized web3 ecosystem (without having to trust middlemen), it also means that users are in full control of their funds, transactions, and security.")); Compl. ¶¶ 45 n.11, 59 n.17, 108 n.26, 170 n.27 (citing *NFT Phishing scams*, Phantom, https://help.phantom.app/hc/en-us/articles/21415696557203-NFT-Phishing-scams (last visited June 24, 2024) ("It's important to understand that Phantom is a non-custodial wallet, which means that we don't have any control over your assets.  This also means that you are responsible for keeping your private keys and seed phrases safe ….")).

### B.     Phantom's Terms of Use

Phantom users are bound by its Terms of Service ("ToS").  Users agree to such ToS when they sign up for a Phantom wallet.  Ex. A ¶ 6 (Decl. of Francesco Agosti).[3]  Specifically, when signing up, users are brought to a screen on which they are prompted to check a box acknowledging "I agree to the Terms of Service" – with "Terms of Service" appearing in purple font (on top of a black background) that hyperlinks to the ToS.  Ex. A ¶ 6.  The button used to proceed to the next page cannot be pressed until the "I agree to the Terms of Service" box is checked.

The ToS clearly and unambiguously requires users to arbitrate any disputes:

> You and Phantom agree that any and all past, present and future disputes, claims, or causes of action arising out of or relating to your use of any of the Site or the Services, this Agreement, or any other controversies or disputes between you and Phantom (including, without limitation, disputes regarding the effectiveness, scope, validity or enforceability of this agreement to arbitrate) (collectively, "Dispute(s)"), shall be determined by arbitration, unless (A) your Country of Residence does not allow this arbitration agreement; (B) you opt out as provided below; or (C) your

---

[3]     Plaintiff acknowledges he is bound by the ToS and incorporates it by reference into his Complaint.  Comp. ¶ 101.  Phantom will refer to the version of the ToS effective from October 28, 2021 until March 24, 2024.  *See* Ex. B. (ToS).

Dispute is subject to an exception to this agreement to arbitrate set forth below.

Ex. B.

Phantom's ToS is also replete with statements limiting and disclaiming Phantom's liability, including but not limited to:

- A waiver of certain types of damages:

  THE PHANTOM PARTIES SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR ANY LOST PROFITS OR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES, WHETHER BASED IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR OTHERWISE OUT OF OR IN CONNECTION WITH ANY AUTHORIZED OR UNAUTHORIZED USE OF THE SITE, THE APP OR THE SERVICES, EVEN IF AN AUTHORIZED REPRESENTATIVE OF PHANTOM HAS BEEN ADVISED OF OR KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. PHANTOM SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR DAMAGES ARISING OUT OF OR IN ANY WAY RELATED TO SOFTWARE, PRODUCTS, SERVICES, AND/OR INFORMATION OFFERED OR PROVIDED BY THIRD-PARTIES AND ACCESSED THROUGH THE APP, SITE OR SERVICES …. IN NO EVENT SHALL THE PHANTOM PARTIES' TOTAL LIABILITY TO YOU FOR ALL DAMAGES (OTHER THAN AS MAY BE REQUIRED BY APPLICABLE LAW IN CASES INVOLVING PERSONAL INJURY) EXCEED THE AMOUNT OF ONE HUNDRED U.S. DOLLARS ($USD100.00) OR ITS EQUIVALENT IN THE LOCAL CURRENCY OF THE APPLICABLE JURISDICTION.

- An assumption of risks of using cryptographic and blockchain-based systems:

  By accessing and using the Services, you represent that you understand the inherent risks associated with using cryptographic and blockchain-based systems, and that you have a working knowledge of the usage and intricacies of Digital Assets …. You understand that anyone can create a token, including fake versions of existing tokens and tokens that falsely claim to represent projects, and acknowledge and accept the risk that you may mistakenly trade those or other tokens. You further acknowledge that we are not responsible for any of these variables or risks and that we cannot be held liable for any resulting losses that you experience while accessing or using the Site or Services.

-       A limitation on Phantom's ability to guarantee or otherwise ensure full security of

the Services:

> You understand and acknowledge that cryptography is a progressing field
> with advances in code cracking and other technical advancements, such as
> the development of quantum computers, which may present risks to Digital
> Assets and the services, and could result in the theft or loss of your Digital
> Assets.  To the extent possible, we intend to update Phantom-developed
> smart contracts related to the Services to account for any advances in
> cryptography and to incorporate additional security measures necessary to
> address risks presented from technological advancements, but that intention
> does not reflect a binding commitment and does not in any way guarantee
> or otherwise ensure full security of the Services.

-       A waiver of any on-going duty to alert a user of potential risks:

> You acknowledge that the Services are subject to flaws and that you are
> solely responsible for evaluating any code provided by the Site or Services.
> This warning and others Phantom provides in these Terms in no way
> evidence or represent any on-going duty to alert you of the potential risks
> of utilizing the Services or accessing the Site.

-       A warning about the risk of loss from transactions in digitals assets, and a

warning that the user makes all decisions about their digital assets:

> Transactions entered into in connection with the Services are irreversible,
> final and there are no refunds.  You acknowledge and agree that you will
> access and use the Site and the Services at your own risk.  The risk of loss
> in trading Digital Assets can be substantial. You should, therefore, carefully
> consider whether such trading is suitable for you in light of your
> circumstances and financial resources.  By using the Services, you represent
> and warrant that you have been, are, and will be solely responsible for
> making your independent appraisal and investigations into the risks of a
> given transaction and the underlying Digital Assets.  You represent that you
> have sufficient knowledge, market sophistication, professional advice, and
> experience to make your evaluation of the merits and risks of any
> transaction conducted in connection with the Services or any Digital Asset.
> You accept all consequences of using the Services, including the risk that
> you may lose access to your Digital Assets indefinitely.  All transaction
> decisions are made solely by you.  Notwithstanding anything in these
> Terms, we accept no responsibility whatsoever for, and will in no
> circumstances be liable to you in connection with, your use of the Services
> for performing Digital Asset transactions.

-       A warning that Phantom has no oversight, involvement, or control concerning a

user's transactions:

> Phantom is a developer of software.  Phantom does not operate a Digital
> Asset exchange platform or offer trade execution or clearing services and,
> therefore, has no oversight, involvement, or control concerning your
> transactions using the Services.

-       An assumption of risks:

> You expressly agree that you assume all risks in connection with your
> access and use of the Site and Services and your interaction therewith.  You
> further expressly waive and release the Phantom Parties from any and all
> liability, claims, causes of action, or damages arising from or in any way
> relating to your use of the Site and Services and your interaction therewith
> ....

Ex. B.

### C.      Plaintiff's Allegations

Plaintiff signed up for a Phantom wallet in 2021.  Compl. ¶ 65.  On July 11, 2023, Plaintiff

transferred 2,293 SOL tokens from a Binance.US wallet to his Phantom wallet.  Compl. ¶ 68.  In

November 2023, Plaintiff registered to receive a free weekly Drip Labs, Inc. ("DRiP") NFT.

Comp. ¶¶ 74, 76.  On or around November 28, 2023, Plaintiff allegedly looked at the "Collectibles"

section of his wallet and clicked on an offer for a "Melea Staking NFT" to receive a "100 SOL

Coupon."  Compl. ¶¶ 81-82.  "Not too long" thereafter, Plaintiff noticed that his tokens were "gone

from his wallet."  Comp. ¶ 85.[4]  Plaintiff subsequently contacted Phantom's customer service

department, which informed Plaintiff that it was "very difficult to track down and recover stolen

---

[4]      Plaintiff cites to a Solana subreddit post (Compl. ¶ 98 n.25) but he fails to mention that he
also posted in that same subreddit that: "I am a newbie when it comes to crypto and like an idiot I
clicked on an nft inside phantom which drained my wallet ....  I feel so stupid."  riquede81, *Just
got hacked 2600 Sols on phantom wallet*, Reddit, r/solana,
https://www.reddit.com/r/solana/comments/1865xte/just_got_hacked_2600_sols_on_phantom_w
allet/ (last visited June 24, 2024) (identifying himself in response to a comment by providing his
wallet address, also provided at Comp. ¶ 68 n. 20).

funds" but advised Plaintiff that he could "report the theft to local authorities" and provided Plaintiff with a list of online services that "help track stolen funds."  Compl. ¶ 88.

 Plaintiff does not allege to have used either option.  Instead, Plaintiff brought this action.

**III.**   **Argument**

**A.**    **The Court Should Compel Arbitration Under the Terms of Service**

Because Plaintiff agreed to the arbitration clause in the ToS, he should be compelled to arbitrate his claims.

"[A] a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "To compel arbitration under the [Federal Arbitration Act], the movant must establish that: 1) a written agreement to arbitrate exists; 2) a nexus to interstate commerce exists; and 3) the arbitration clause covers the claims."  *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017).  While federal law "establishes the enforceability of arbitration agreements," state law governs issues regarding the "interpretation and formation of [arbitration] agreements," including the determination of whether an arbitration agreement exists. *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The parties agreed that the ToS should be "construed and enforced in accordance with the laws of the state of California ... provided that all provisions hereof related to arbitration shall be governed by and construed in accordance with the Federal Arbitration Act ...."  Ex. B.

Courts in this circuit treat a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.  *Tracfone*, 229 F. Supp. 3d at 1292.  Accordingly, courts may consider materials outside the four corners of a complaint.  Id.

### 1.      The Parties Formed an Agreement to Arbitrate

The parties entered into an agreement to arbitrate under applicable California law.  "A touchstone of California contract law is mutual manifestation of assent ...."  *Babcock v. Neutron Holdings, Inc*., 454 F. Supp. 3d 1222, 1229 (S.D. Fla. 2020) (applying California law).  California contract law determines "assent by an objective standard that takes into account both what the offeree ... did and the transactional context in which the offeree ... acted."  Id. (citations omitted).  "These elemental principles of contract formation apply with equal force to contracts formed online.  Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022).

Phantom's ToS is a valid "clickwrap" agreement," a type of agreement in which a website or phone application presents users with "specified contractual terms" and "users must check a box explicitly stating I agree in order to proceed."  *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 513 (9th Cir. 2023) (citations omitted).  Clickwrap agreements like the ToS are "routinely" found to be enforceable because "the consumer has received notice of the terms being offered and ... knows or has reason to know that the other party may infer from his conduct that he assents to those terms."  *Berman*, 30 F.4th at 856 (citations omitted); *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 939 (N.D. Cal. 2023) (finding mutual assent where Plaintiffs clicked a box next to a hyperlinked terms of service that stated "I agree to the Fitbit Terms of Service").

### 2.      A Nexus to Interstate Commerce Exists

A nexus to interstate commerce clearly exists.  The Complaint states that Plaintiff, a citizen of Florida, used the internet to contract with Phantom, a citizen of Delaware and California.  *See Babcock*, 454 F. Supp. 3d at 1229 n.2 (nexus to interstate commerce conceded by the parties where

"[Plaintiff], while in Florida, used the Internet to contract with [Defendant], who was a citizen of Delaware and California"). *See* Compl. ¶¶ 1-3, 9.

### 3.        The Arbitration Clause Covers Plaintiff's Claims

The arbitration clause in the TOS plainly covers Plaintiff's claims.   The agreement specifically requires the arbitration of any "controversies or disputes between [Plaintiff] and Phantom (including, without limitation, disputes regarding the effectiveness, scope, validity or enforceability of this agreement to arbitrate)," subject to exceptions not relevant here.   Ex. B.   See *Costa v. Experian Info. Sols. Inc.*, 2023 WL 5434683, at *2 (M.D. Fla. Aug. 8, 2023), report and recommendation adopted, 2023 WL 5432296 (M.D. Fla. Aug. 23, 2023) ("Simply put, Plaintiff's argument [that his claims are not subject to arbitration] is unavailing because the arbitration agreement delegates 'all issues' to an arbitrator, including issues regarding arbitrability, enforceability and scope.").   Accordingly, the parties entered into a binding agreement to arbitrate Plaintiff's claims.

### 4.        Phantom Has Not Waived its Right to Compel Arbitration

To the extent that Plaintiff implies that Phantom waived its right to arbitration (Compl. ¶ 100), Phantom has done nothing to act inconsistently with its arbitration rights, as it has not "substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).   To the contrary, promptly after retaining counsel, Phantom alerted the Court of its intention to file a motion to compel arbitration.   See ECF No. 17.

### B.        **Alternatively, The Court Should Dismiss for Failure to State a Claim**

If the Court does not compel arbitration of Plaintiff's claims, it should alternatively dismiss the Complaint with prejudice for failure to state a claim.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting *Twombly*, 550 U.S. at 555).  When ruling on a 12(b)(6) motion, the court considers the pleadings, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).

1.      <u>Plaintiff's Claims Are Largely Barred by the Terms of Use</u>

As explained above, the ToS contains a detailed limitation of liability provision that bars Phantom's liability for the Complaint's negligence, breach of fiduciary duty, Unfair Competition Law ("UCL"), and breach of contract claims.[5]

Limitation of liability provisions "have long been recognized as valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc*., 209 Cal. App. 4th 1118, 1126 (2012) (citation omitted).  Such agreements have been enforced against certain of the claims brought by Plaintiff. See id. (finding release of liability barred damages for breach of contract, bad faith, and negligence); *R.H. v. Los Gatos Union Sch. Dist*., 33 F. Supp. 3d 1138, 1166 (N.D. Cal. 2014) (finding release of liability and express assumption of risk barred claims for, inter alia, negligence, negligent misrepresentation, and concealment); *Sperduto v. Time Warner Cable, Inc.*, 2018 WL

---

[5]      Although the gross negligence and Consumer Legal Remedies Act ("CLRA") claims cannot be foreclosed by a limitation on liability clause, they are insufficiently pleaded, as explained below.

6177239, at *10 (C.D. Cal. Aug. 13, 2018) (finding release of liability barred breach of fiduciary duty claims); *Net2Phone, Inc. v. Superior Ct., 109 Cal. App.* 4th 583, 589-90 (2003) (enforcing forum selection and choice of law clause that effectively waived real party in interest's UCL claim). Accordingly, Plaintiff's negligence, breach of fiduciary duty, UCL, and breach of contract claims should be dismissed pursuant to the limitation on liability clauses in the ToS.

2.    Plaintiff Fails to State a Claim for Negligence (Count I) or Gross
Negligence (Count II)

To plead negligence, Plaintiff must allege (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach, and (4) the plaintiff's injury. *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *4 (N.D. Cal. May 15, 2018).

"Gross negligence falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind." *Anderson v. Fitness Int'l, LLC*, 4 Cal. App. 5th 867, 881 (2016) (citations omitted).

i.    *Plaintiff's Negligence and Gross Negligence Claims Are
Barred by the Economic Loss Rule*

The economic loss rule bars Plaintiff's negligence and gross negligence claims. Under California law, the economic loss rule bars "recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (finding economic loss rule barred plaintiff's negligence claim that was based on an asserted duty that was contrary to the rights and obligations expressed in the parties' contract); S. California Gas Leak Cases v. Superior Ct. of Los Angeles, 7 Cal. 5th 391, 400 (2019) ("[L]iability in negligence for purely economic losses is the exception, not the rule" (citations omitted)). "The rule applies equally to claims for negligence and gross negligence." *Whitesides v. E*TRADE Sec., LLC*, 2021 WL 930794, at *4 (N.D. Cal. Mar. 11, 2021).

11

Plaintiff seeks only the recovery of economic losses for Phantom's alleged ordinary and gross negligence.  Compl. ¶¶ 118, 134.  Plaintiff does not allege physical or property damages. Further, as in Sheen, the parties are in contractual privity (pursuant to the ToS) and Plaintiff's negligence claims are based on alleged duties that are contrary to the terms of the ToS.  His negligence and gross negligence claims thus must be dismissed.

> ii.  *Plaintiff Fails to Sufficiently Allege Breach of Duty or Causation*

Plaintiff also fails to plausibly allege that the Phantom breached any purported duty.  As alleged, Phantom <u>does</u> take action to protect and warn users about security threats, including by warning users against clicking scam NFT offers.  Compl. ¶¶ 39-47, 92.  Plaintiff's main support for the inadequacy of Phantom's conduct is the fact that he fell prey to theft despite Phantom's security measures.  Compl. ¶ 93.  But secure does not mean 100% impervious to theft, especially when the alleged theft was due to <u>Plaintiff's own actions</u>.  Compl. ¶¶ 83-86.

It is critical that Phantom offers a <u>self</u>-custody wallet.  Phantom has no control over Plaintiff's assets, and cannot prevent Plaintiff from clicking a malicious link.  To the extent Plaintiff faults Phantom because Phantom permits NFT airdrops, the mere fact that "not all airdrops, however, are harmless," Compl. ¶ 27, and can be used for malicious purposes, is not sufficient to plead breach of duty given that NFTs and airdrops thereof have valid purposes and value. Compl. ¶¶ 25-26.  Further, there are no non-conclusory allegations regarding why Phantom should have known of any issue with the NFT in question or that Plaintiff's loss would have been prevented if Phantom took any particular additional security measures.

> 3.  <u>Plaintiff Fails to State a Breach of Fiduciary Duty Claim (Count III)</u>

"[T]o plead a cause of action for breach of fiduciary duty, there must be shown [1] the existence of a fiduciary relationship, [2] its breach, and [3] damage proximately caused by that

breach." *Pierce v. Lyman, 1 Cal. App.* 4th 1093, 1101 (1991), *superseded by statute on other grounds*.  A fiduciary is a person that "must either knowingly undertake to act on behalf and for the benefit of another, or enter into a relationship which imposes that undertaking as a matter of law." *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, (2007).  Typical examples of fiduciary relationships imposed by law in commercial settings include "trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003).

Phantom does not owe its software's users any fiduciary duties.  The ToS expressly disclaims any fiduciary duties; it states that "[t]he Terms are not intended to, and do not, create or impose any fiduciary duties on us."  Ex. B.  Moreover, Phantom and Plaintiff did not enter any relationship that would impose fiduciary obligations on Phantom as a matter of law; Plaintiff is merely a customer of Phantom's wallet software.  While Phantom is not a bank (and never holds, possesses, or takes custody of any user assets), courts notably do not even ordinarily impose fiduciary duties on banks. *Tristan v. Bank of America*, 2023 WL 4417271, at *15 (C.D. Cal. Jun. 28, 2023) ("[I]t has been repeatedly held that the relationship between bank and customer is not fiduciary in nature.").

Plaintiff alleges that Phantom owes him a fiduciary duty based on Phantom's "sophistication" in the "virtual wallet market" and "knowledge" that its users are often "newer to the market."  Compl. ¶ 142.  That allegation, unsupported in case law, is also undermined by the Complaint, which states that Plaintiff had virtual wallets and traded in cryptocurrency since 2021 and possessed at least 2,293 SOL tokens by July 2023.  Comp. ¶ 65.  Moreover, in the ToS, Plaintiff agreed that he had a "working knowledge of the usage and intricacies of Digital Assets" and "sufficient knowledge, market sophistication, professional advice, and experience to make your

evaluation of the merits and risks of any transaction ...."  Ex. B.  Plaintiff's allegations of Phantom's relative knowledge or sophistication compared to Plaintiff thus are insufficient to give rise to fiduciary obligations.  See *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008) ("It is not at all unusual for a party to enter into a contract for the very purpose of obtaining the superior knowledge or expertise of the other party.  Standing alone, that circumstance would not necessarily create fiduciary obligations ...."); *Russell v. Maman*, 2019 WL 13039744, at *6 (N.D. Cal. June 19, 2019) (rejecting argument that plaintiff "was so vulnerable that a fiduciary obligation arose by necessity, particularly given his own averments regarding his professional sophistication and accomplishments"); *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1098 (N.D. Cal. 2007) ("Mere difference in economic power and size and access to information is not sufficient to show vulnerability to establish a fiduciary relationship").

Finally, Plaintiff has not pleaded breach of any duty to Plaintiff.  See Section III.B.2.ii, *supra*.

### 4.   Plaintiff Fails to State a UCL Claim

Plaintiff fails to state a violation of the UCL based on Phantom's supposed failure to "properly monitor[] wallet transfers" and "properly warn[]" users of risks of receiving NFTs. Compl. ¶ 157.

The UCL prohibits any "[1] unlawful, [2] unfair or [3] fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "Each of the three 'prongs' of the UCL provides a 'separate and distinct theory of liability' and an independent basis for relief."  *Elias v. Hewlett–Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir.2010)).  However, where, as here, a plaintiff alleges UCL claims based on a "unified course of fraudulent conduct," a plaintiff is required to plead all his UCL claims with particularity

pursuant to FRCP 9(b).  *See BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 801

(C.D. Cal. 2021); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021) (finding

Rule 9(b) applies where UCL claims are based on alleged affirmative misrepresentations or

material omissions).  Because Plaintiff seems to rely on the "unfair" and "fraudulent" prongs,

Phantom addresses both in turn.  Comp. ¶¶ 154-57.

> i.      *Plaintiff Cannot Meet the "Fraud" Prong*

To state a UCL claim based on a theory of fraud, a plaintiff must prove "actual reliance on

the allegedly deceptive or misleading statements," meaning "the misrepresentation was an

immediate cause of the injury-producing conduct."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

310, 326 (2011) (quoting In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009)).  "To plead reliance,

a plaintiff 'must truthfully allege that she would not have bought the product but for the allegedly

actionable misrepresentation or omission.'"  *Watkins.*, 550 F. Supp. 3d at 834  (quoting *Shaeffer*

*v. Califia Farms*, LLC, 44 Cal. App. 5th 1125, 1143 (2020)).

In order to determine whether a representation is misleading, a court evaluates, utilizing a

"reasonable consumer standard," whether "members of the public are likely to be deceived."

Tobacco II, 46 Cal. 4th at 312 (citations omitted); W*illiams v. Gerber Prods. Co.*, 552 F.3d 934,

938 (9th Cir. 2008).  A UCL claim may be based on an omission if the omission is "contrary to a

representation actually made by the defendant, or an omission of a fact that the defendant was

obliged to disclose."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006);

*Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to

disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.").

There is a duty to disclose only in four circumstances: "(1) when there is a fiduciary relationship

between the parties; (2) when the defendant had exclusive knowledge of facts unknown to the

plaintiff; (3) when the defendant actively conceals a material fact from plaintiff; and (4) when the

defendant makes partial representations while not disclosing other material facts." *Turner v. Porsche Cars N. Am., Inc.*, 2024 WL 2107714, at *3 (C.D. Cal. Mar. 4, 2024).

Plaintiff has not sufficiently alleged actual reliance. Plaintiff vaguely alleges he relied on Phantom's "representations about the safety and security" when he "transferred his cryptocurrency investments to Defendant in July 2023," Compl. ¶¶ 67, 140; he does not allege with particularity that he relied on any specific representations from Phantom when he, inter alia, signed up for DRiP or selected the NFT at issue, which Plaintiff suggests was the immediate cause of his injury. Nor does Plaintiff allege Phantom had control over the NFT at issue, that Phantom actually knew of its "malicious properties," or why Phantom should have known. Id. ¶¶ 86, 94-95.

Moreover, Plaintiff has not alleged any particular affirmative misrepresentations that a reasonable consumer would find misleading nor that Phantom has (let alone has breached) any duty to disclose. As discussed in Section III.B.3 *supra*, there is no fiduciary relationship between the parties, and Plaintiff does not allege Phantom has exclusive knowledge of risks of NFTs (which it discloses online, *see* Section II.A, *supra*) or engaged in any active concealment or partial representations.

### ii. Plaintiff Cannot Meet the "Unfair" Prong

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc*., 142 Cal. App. 4th 1457, 1473 (2006). While California law is unsettled regarding the standard for consumer claims under the "unfair" prong, courts apply either a balancing test or a tethering test. *Davis v. HSBC Bank Nevada*, N.A., 691 F.3d 1152, 1169 (9th Cir. 2012); *Lozano v. AT & T Wireless Servs, Inc*., 504 F.3d 718, 736 (9th Cir. 2007). Under the balancing test, "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to

competition, and is not an injury the consumers themselves could reasonably have avoided." *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544, 1555 (2007) (citations omitted). Under the tethering test, a practice is unfair if defendant violated a "legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Communications, Inc., v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 186-87 (1999).  Plaintiff appears to rely on the balancing test.  Compl. ¶ 157.

To the extent plaintiff's unfairness claim is based on alleged misrepresentations or omissions by Phantom, it fails for the same reasons that the Complaint does not meet the fraud prong.  *See Watkin*, 550 F. Supp. 3d at 834 ("The reliance requirement applies ... also to claims asserted under the 'unlawful' and 'unfair' prongs where those claims are predicated on misrepresentation and deception."); *In re Actimmune Mktg. Litig*., 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), aff'd, 464 F. App'x 651 (9th Cir. 2011) (granting dismissal where "plaintiffs' unfair prong claims overlap entirely with their claims of fraud").

Additionally, to the extent Plaintiff alleges a UCL unfairness claim based on Phantom's alleged failure to stop the supposed theft, Plaintiff's claim fails.  Plaintiff's allegation that Phantom "transferred nearly all assets in Plaintiff's Phantom Wallet to another individual's Phantom Wallet" and "allowed the transaction to go forward" is implausible and contradicted by Plaintiff's own allegations.  As Plaintiff acknowledges, Phantom offers a self-custody wallet, and thus never possess, holds, or controls Plaintiff's assets; it is literally impossible as a technical matter for Phantom to transfer Plaintiff's assets to another wallet.  Moreover, to the extent Plaintiff faults Phantom for permitting users to receive NFT airdrops, Plaintiff fails to allege that the harm outweighs the benefits, given the value of NFTs in realms of digital art and business.  Compl. ¶¶

25-26.  Finally, Plaintiff has not alleged he could not have reasonably avoided his loss by taking further precautions.

> 5.      Plaintiff Fails to State a CLRA Claim

The Complaint does not state a claim under the CLRA for two principal reasons.

> > i.      *Plaintiff's CLRA Claim Fails for the Same Reasons as His UCL Fraud Claim*

Claims under the CLRA are analyzed under the same standard as claims under the fraud prong of the UCL.  Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (collecting cases).  Thus, Plaintiff's CLRA claims fail for the same reasons, including that Plaintiff has not sufficiently plead reliance or (breach of) a duty to disclose.

> > ii.     *Plaintiff Has Not Sufficiently Alleged a Statutory "Transaction"*

Plaintiff's CLRA claim also fails because Plaintiff is not a "consumer" that entered into a "transaction" with Phantom for purposes of the CLRA.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices ... in a transaction intended to result or that results in the sale or lease of goods or services to any consumer," including"[r]epresenting that goods or services have ... characteristics ... benefits, or quantities that they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade ...."  Cal. Civ. Code §§ 1770(a)(5), (7).  Under § 1761(e), a transaction means "an agreement between a consumer and another person ...."  A consumer is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Goods are "tangible chattels bought or leased for use primarily for personal, family, or household purposes ... ," and services are "work, labor, and services for other than a commercial or business use ...."  §§ 1761(a), (b).

Plaintiff alleges that Phantom entered a "transaction" with Plaintiff by "provid[ing] Plaintiff with access to its online virtual wallet service...."  Compl. ¶ 165.  However, courts in this

district have held that the CLRA does not apply to purchases of virtual currencies.  See *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (finding transactions involving purchase of virtual currency were not goods or services); *I.B. ex rel. Fife v. Facebook*, Inc., 905 F. Supp. 2d 989, 996 (N.D. Cal. 2012) (same).  This case law plainly precludes the CLRA claim.

6.      <u>Plaintiff Fails to State a Breach of Contract Claim</u>

Plaintiff also tries to thrust liability onto Phantom by asserting a claim for breach of contract under a third-party beneficiary theory.  According to Plaintiff, (a) Phantom and DRiP entered an agreement permitting DRiP to advertise on Phantom's platform and requiring use of security measures to protect information inside Phantom's customers' wallets, (b) Phantom and/or DRiP breached the agreement by failing to following the security measures, and (c) this breach caused Plaintiff to lose his tokens, i.e., the "criminal" would not have been able to "gain[] access" to his wallet and steal his tokens but for the breach.  Compl. ¶¶ 177-81.  Plaintiff's theory fails.

"A third-party may qualify as a beneficiary under a contract where the contracting parties intend to benefit the third-party and the intent appears in the terms of the agreement."  *Li v. AT&T Mobility, LLC*, 2022 WL 3575411, at *2 (C.D. Cal. June 17, 2022) (citing *Jensen v. U-Haul Co. of Cal.*, 226 Cal. Rptr. 3d 797, 802 (Cal. Ct. App. 2017)); Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").  To determine whether there is an intent to benefit a third-party, courts consider: "(1) whether the third party would in fact benefit from the contract, ... (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties."  *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019) ("All three elements must be satisfied to permit the third-party action to go forward.").

19

Plaintiff's allegations fail to meet this standard.  The Complaint does not contain any allegations that the supposed agreement expressly reflects an intent to benefit him (or any users) or that permitting a third-party suit would be consistent with the contract's objectives.  *See Sherman v. Pepperidge Farm, Inc*., 2023 WL 5207458, at *5 (C.D. Cal. Apr. 28, 2023) (dismissing claim where Plaintiff failed to allege terms of the contract "explicitly spell[ed] out an intent to benefit him").  Moreover, Plaintiff fails to identify any specific contractual provision that was breached or that Phantom was the breaching actor.  See *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) ("The complaint must identify the specific provision of the contract allegedly breached by the defendant.").

## IV.   <u>Conclusion</u>

For the foregoing reasons, Phantom respectfully requests that the Court compel arbitration or, in the alternative, dismiss the Complaint with prejudice for failure to state a claim.

Dated:  June 24, 2024                    Respectfully submitted,


                                         */s/ Melissa Madrigal*
                                         Jason Gottlieb (*Admitted pro hac vice*)
                                         Melissa Madrigal (Fl. Bar No. 93241)
                                         Michael Mix (*Admitted pro hac vice*)
                                         Rachel Fleder (*Admitted pro hac vice*)
                                         MORRISON COHEN LLP
                                         909 Third Avenue
                                         New York, NY 10022-4784
                                         Telephone: (212) 735-8600
                                         Facsimile: (212) 735-8708

                                         *Counsel for Defendant Phantom Technologies, Inc.*

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION OF PREFILING CONFERENCE</u>

Counsel for Phantom conferred with Plaintiff's counsel by telephone on May 22, 2024 and email on June 21, 2024 in a good faith effort to resolve the issues raised in Phantom's motion to compel arbitration and were unable to do so.  Plaintiff's counsel confirmed via email on June 21, 2024 that Plaintiff intends to oppose this motion.

Dated:  June 24, 2024

<u>/s/ Melissa Madrigal</u>
Jason Gottlieb (*Admitted pro hac vice*)
Melissa Madrigal (Fl. Bar No. 93241)
Michael Mix (*Admitted pro hac vice*)
Rachel Fleder (*Admitted pro hac vice*)
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022-4784
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

*Counsel for Defendant Phantom Technologies, Inc.*
